S.I.S. ENTERPRISES, INC., ET AL. *v.* ZONING BOARD OF APPEALS OF THE CITY OF BRISTOL ET AL.
(11794)

LANDAU, FREEDMAN and SCHALLER, Js.

Argued October 27—decision released December 21, 1993

*Alfred F. Morrocco, Jr.,* with whom was *Thomas Conlin,* for the appellants (plaintiffs).

*Ann T. Baldwin,* assistant corporation counsel, for the appellee (named defendant).

FREEDMAN, J. The plaintiffs, S.I.S. Enterprises, Inc., Socrates Diacosavvas and Irene Diacosavvas, appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant zoning board of appeals of the city of Bristol.[1] The plaintiffs claim that the trial court improperly found that (1) there were a sufficient number of members of the board present when the decision was made on the plaintiffs' application, (2) a zoning board of appeals may accept a proxy vote from an absent board member, (3) the board did not act illegally, arbitrarily or contrary to its own regulations and the provisions of the General Statutes in rendering its decision on the plaintiffs' application. The plaintiffs further claim that the findings of the trial court were not supported by the record and that the plaintiffs' application should be granted by default under the time provisions of General Statutes § 8-7d (a). We reverse the judgment of the trial court.[2]

[1] Also named as defendants in the appeal to the trial court were the town clerk of the city of Bristol and the following members of the defendant board: Joseph A. Lanosa, Gilles H. Angers, Bertrand F. Bouvier, Bernard J. Brozowski, Arthur J. Ward and Jesse Morton. At the time of trial, the action was withdrawn as to all defendants except the zoning board of appeals of the city of Bristol.

[2] Because we reverse the judgment of the trial court on the first and second issues raised by the plaintiffs, regarding the number of members of a zoning board of appeals present and voting necessary to act on an application for a variance, we need not address the remaining issues. We point out, however that the issue relating to automatic approval for failure to meet the statutory time limits as it applies to this case has been dealt with in *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* 225 Conn. 432, 623 A.2d 1007 (1993). In *Fedus,* which was decided after the briefs had been filed in this matter, our Supreme Court held that decisions of a zoning board of appeals are not subject to automatic approval because of the board's failure to comply with the mandates of General Statutes § 8-7d (a).

The following facts were found by the trial court. The plaintiffs are the owners of real property located in Bristol, part of which is in a single-family residential zone. On May 31, 1991, the plaintiffs applied to the defendant board to obtain a variance of the Bristol zoning regulations related to access to nonresidential parking through a residential zone, minimum number of parking spaces, size of the street yard, front yard parking, and the expansion of a nonconforming building by more than 25 percent. The plaintiffs' application for a variance appeared on the board's agenda seven times in a seven month period. The first time was a public hearing scheduled for July 10, 1990. That hearing was continued at the request of the plaintiffs. At the second public hearing, held on September 4, 1990, the board heard testimony from the plaintiffs' attorney, a neighboring landowner's attorney, and six other area residents. One of the five board members then disqualified himself and, at the request of the plaintiffs' attorney, the vote was postponed until another member, not present, could review the tape recording of the hearing.

At the third meeting of the board, held on October 2, 1990, the chairman explained that due to new appointments and additional disqualifications there were still only four members available to vote on the application. The board continued the matter to allow the chairman to meet with the corporation counsel for the city and the mayor. At the fourth meeting of the board, held on November 7, 1990, the plaintiffs requested, and the board granted, a postponement until the Bristol zoning commission acted on a pending application for a special permit application. At the fifth meeting, held on January 2, 1991, the matter was again postponed as the zoning commission had not yet acted on the special permit application. On February 4, 1991, the sixth meeting of the board took place and the matter was again postponed because one board member was absent.

The final meeting of the board was held on February 8, 1991, with three board members present, all of whom had participated in the public hearing. One board member who had participated in the public hearing was in a hospital. All other members and alternates had previously disqualified themselves. The hospitalized member sent to the meeting via a city official a sealed envelope containing his vote.[3] The envelope had the following written on it: "If my position on this vote as contained herein is not acceptable to all parties in this matter by common consent, this envelope should be destroyed, unopened, by shredding." Although the plaintiffs' attorney and the attorney for an opponent to the application objected to its use, the board members present decided to use the vote contained in the envelope. The vote was taken, including that in the envelope, and the result was four to none to deny the application. The plaintiffs appealed the board's decision to the trial court. The trial court dismissed the plaintiffs' appeal and the appeal to this court followed.

General Statutes § 8-5 (a) provides in pertinent part that "[i]n each municipality having a zoning commission there shall be a zoning board of appeals consisting of five regular members and three alternate members, unless otherwise provided by special act. . . ." There is no special act pertaining to the makeup of the zoning board of appeals of the city of Bristol. General Statutes § 8-5a sets forth the way in which the alternate members shall be chosen in the event of the absence of a regular member.[4] In order

---

[3] The plaintiffs refer throughout their brief to this envelope and its contents as a "proxy vote." This, of course, is a misnomer. As the defendant aptly points out in its brief, a proxy is a substitution of someone for another or a deputation of one to represent or act for another. The envelope and its contents would be more correctly referred to as an "absentee vote."

[4] General Statutes § 8-5a provides: "If a regular member of a zoning board of appeals is absent, he may designate an alternate from the panel of alternates to act in his place. If he fails to make such designation or if he is

for the zoning board of appeals to vary the application of any zoning bylaw, ordinance, rule, or regulation, there must be the concurring vote of four members of such board. General Statutes § 8-7.

The trial court, relying on *St. John's R. C. Church* v. *Board of Adjustment or Appeals,* 125 Conn. 714, 720, 8 A.2d 1 (1939), found that a quorum was all that was required for the board to act on the plaintiffs' application. Since here the board was composed of five members, the trial court reasoned that the three members present were a majority and constituted a quorum. The *St. John's* decision quoted *Strain* v. *Mims,* 123 Conn. 275, 281, 193 A. 754 (1937), in which our Supreme Court had stated that " '[i]n the absence of legislative restriction, the general rule is that a committee or commission performing such functions as those exercised by the zoning commission in this case can take valid action at a meeting at which all members have proper notice and at which a majority are present.' " *St. John's R. C. Church* v. *Board of Adjustment or Appeals,* supra. The board urges us to rely on *Ghent* v. *Zoning Commission,* 220 Conn. 584, 600 A.2d 1010 (1991), in which our Supreme Court again cited *Strain* with approval and quoted the same general rule regarding valid action at a meeting where there is a majority present. Such reliance, here, would be misplaced.

Here, unlike in *St. John's* where there were four members of the board present and voting, and unlike in *Ghent,* where the action of the zoning commission was to amend the zoning regulations, which required the vote of only a majority of the commission, the plain-

disqualified, the chairman of the board shall designate an alternate from such panel, choosing alternates in rotation so that they shall act as nearly equal a number of times as possible. If any alternate is not available in accordance with such rotation, such fact shall be recorded in the minutes of the meeting."

tiffs sought a variance of the zoning regulations, which could be granted only by the concurring vote of four members of the zoning board of appeals and could not be granted by a simple majority of a five member board. At the time of the *St. John's* decision, the predecessor to General Statutes § 8-7, General Statutes (1930 Rev.) § 428, also required the concurring vote of four members of the zoning board of appeals to vary the zoning regulations. There, the court held that "[t]he action of the four members of the board present at the executive session complied with the provisions of [§ 428]." *St. John's R. C. Church* v. *Board of Adjustment or Appeals,* supra. A vote taken with fewer than four members present and voting, however, would create the anomaly of allowing the board to vote under circumstances where it would be impossible to grant a variance even if all of the members present vote in favor of the variance. Reading General Statutes §§ 8-5 and 8-7 together, we come to the inescapable conclusion that, since the concurring vote of four members of a zoning board of appeals is required to vary the zoning regulations, a zoning board of appeals may not act unless there are at least four qualified members present and voting. "[C]ompelling principles of statutory construction . . . require us to construe [statutes] in a manner that will not thwart [their] intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. . . ." (Citations omitted; internal quotation marks omitted.) *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa,* 220 Conn. 643, 650–51, 600 A.2d 1 (1991).

We must decide, therefore, whether the actual presence of three members at the meeting of the board where the plaintiffs' application was denied when taken together with the absentee ballot of the member who

was in a hospital and not present was tantamount to there being four qualified members present and voting. We conclude that it is not. "It is a well-settled rule that when municipal councils or boards . . . are called upon to perform . . . acts involving discretion and judgment in administering the public affairs, *they can only act at authorized meetings* duly held. The council . . . must meet and act as a board or council. The members cannot make a valid determination binding upon the corporation by their assent separately and individually expressed. . . . Wherever a matter calls for the exercise of deliberation and judgment, it is right that all parties and interests to be affected by the result should have the benefit of the counsel and judgment of all the persons to whom has been intrusted the decision. . . . All the benefit, in short, which can flow from the mutual consultation, the experience and knowledge, the wisdom and judgment of each and all the members, is endangered by any other rule." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Jack* v. *Torrant,* 136 Conn. 414, 420, 71 A.2d 705 (1950).

When four out of five votes must be in the affirmative to vary the zoning regulations, the applicant is entitled to have the matter thoroughly debated and discussed by all of those who will be voting, present and participating at the time the vote is taken. It is not uncommon for one to enter a meeting with one result in mind and to have a change of mind after hearing a thoughtful discussion and analysis and expression of opinions by fellow board members. Even though we now know that the absent commissioner was voting against the plaintiff's application, it is impossible to know what the outcome would have been had the proper debate taken place among all four members. "A valid vote can occur only when agency members are present and convened together at a public meeting. The

vote of an absent member cannot be counted even if the position of the absent member is known to other agency members." 9 Connecticut Practice, R. Fuller, Land Use Law and Practice (1993) § 21.3.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiffs' appeal and remanding the matter to the defendant zoning board of appeals for a new hearing consistent with this opinion.

In this opinion the other judges concurred.