[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Alan Weiner and Keith Weiner, dba Colonial Builders and Developers, have appealed the decision of the New Milford Zoning Commission ("Commission") denying the plaintiffs' application for a special permit and site plan approval to operate an outdoor flea market at 458 Danbury Road, New Milford, Connecticut. The activity was proposed to be conducted in an open lot just north of the present site of Maplewood Industrial Park and is known as Maplewood Industrial Park CT Page 4967 Section II. The property consists of approximately 11 acres in the industrial zone.
In 1992 the plaintiffs were granted a special permit and site plan approval for an indoor flea market covering 25,000 square feet within the structure on the property of Maplewood Industrial Park.
The plaintiffs submitted to the Commission applications for a special permit and site plan approval on May 2, 1995. (Record, Ex. 1) Notices were published and a public hearing was held on June 28, 1994 pursuant to Articles II-IV and IIIA of the zoning regulations governing special permits. The public hearing was continued to July 12, 1994 for additional information pertaining to traffic and Department of Transportation approval. Prior to July 12, 1994, specifically on June 24, 1994, the State Traffic Commission issued a permit, specifically finding that the "Flea Market Expansion . . . will not imperil the safety of the public. . ." (Record, No. 3.)
The public hearing reconvened on July 12, 1994 and was closed following additional testimony pertaining to traffic. At a meeting of the Commission held September 13, 1994, the members of the Commission voted three to two to deny the plaintiffs' applications. As the applicant, the plaintiffs are aggrieved by the Commission action. Written notification to the plaintiffs of the denial (Record, Ex. 10), dated September 15, 1994, gave as reasons for the denial:
a. The proposed use would not conform to the Statement of Intent as stated in the zoning regulations in Article I-I.
b. The proposed use would be a detriment to the health and safety of the abutting residential neighbors.
c. The proposed use would create an additional nine (9) percent of the Saturday peak hour traffic and 15 percent of the Sunday peak hour traffic.
d. The proposed use would create noise, dust and disturbance to the rest home abutting the property. CT Page 4968
At the meeting of September 13, 1994, an alternate, Charles Raymond participated in the discussion and the record discloses that he had a persuasive impact on the voting members. Charles Raymond did not vote.
For the purposes of this appeal the dispositive issue is whether the Commission's denial of the plaintiffs' applications was because of improper participation of an alternate member not authorized to vote.
Section 8-1b of the General Statutes provides as follows:
 Any town, city or borough, in addition to such powers as it has under the provisions of the General Statutes or any Special Act, shall have the power to provide by ordinance for the appointment or election of alternate members to its zoning commission or combined planning zoning commission. Such alternate members shall, when seated as provided herein, have all the powers and duties set forth in the General Statutes or any Special Act relating to such municipality for such commission and its members. Such alternate members shall be electors and shall not be members of the zoning board of appeals or planning commission. Such ordinance shall provide for the manner of designating alternates to act. Emphasis added.
The General Statutes also provide in section 8-1
that: ". . . the zoning commission shall consist of not less than five nor more than nine members. . ." To allow an alternate who has not been seated to participate in the deliberation process flies in the face of the statute. In this case it is clear that Charles Raymond had a profound effect upon the deliberation. Under these circumstances, the Commission effectively was comprised of six members, not five. While the court does not question the participation of alternates in the hearing process, it finds that once the commission reaches the time to deliberate, the alternate must be excused. CT Page 4969
The status of an alternate member of a commission is analogous to that of an alternate juror in a civil or criminal case.
Sec. 51-243 of the General Statutes provides in pertinent part as follows:
 (d) If, at any time, any juror shall, for any reason, become unable to further perform his duty, the court may excuse him. If any juror is so excused or dies, the court may order that an alternate juror who is designated by lot to be drawn by the clerk, shall become a part of the regular panel and the trial shall then proceed as though the alternate juror had been a member of the regular panel from the time when the trial was begun.
Section 52-82h of the General Statutes provides in pertinent part as follows:
 (c) Alternate jurors shall attend at all times upon trial of the cause. They shall be seated when the case is on trial with or near the jurors constituting the regular panel, with equal opportunity to see and hear all matters adduced in the trial of the case. [If, at any time, any juror shall, for any reason, become unable to further perform his duty, the court may excuse him and, if any juror is so excused or dies, the court may order that an alternate juror who is designated by lot to be drawn by the clerk shall become a part of the regular panel and the trial shall then proceed as though such juror had been a member of the regular panel from the time when it was begun.] A juror who has been selected to serve as an alternate shall not be segregated from the regular panel except when the case is given to the regular panel for deliberation at which time he shall be dismissed from further service on said case. Emphasis added.
Clearly until an alternate juror has been designated CT Page 4970 as a regular member of the panel such individual may not participate in the final deliberation. There is no reason in law or logic for a different result where the issue involves an alternate commission member.
In Bove v. Board of Review of City of Newport,185 A.2d 751, the Superior Court of Rhode Island held that "a board of review is not legally constituted where a statute requires five members to sit, and the chairman, after disqualifying himself, appoints an alternate or substitute but remains as chairman. 83 Am.Jur.2d Zoningand Planning, 777. The court stated at page 752:
 . . . The fact that the petitioners agreed to the procedure adopted by the board is of no legal significance. The statutory provisions that the board of review shall consist of five members is a jurisdictional requirement and cannot be altered by the parties. Nor can the parties vest the board with jurisdiction not granted by the enabling act.
 Having disqualified himself from participating in the ultimate decision on the application and having required the alternate member to sit as an active member, it was clearly the duty of the chairman to take no part in the conduct of the hearing. The hearing before six members was a nullity under the act. . . .
The court finds that the procedure utilized by the defendant was contrary to law. For the reasons stated the appeal is sustained and the matter is remanded to the commission for further proceedings in accordance with law.
PICKETT, J.