MARGUERITE A. KOMONDY v. ZONING BOARD OF
APPEALS OF THE TOWN OF CHESTER
(AC 31944)

Gruendel, Alvord and Dupont, Js.

---

Argued January 5—officially released April 5, 2011

*Christina P. Burnham*, for the appellant (plaintiff).

*John S. Bennet*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. In this certified zoning appeal, the plaintiff, Marguerite Komondy, appeals from the judgment of the Superior Court dismissing her appeal from the decision of the defendant, the zoning board of appeals (board) of the town of Chester (town), which denied her appeal from two decisions of the zoning enforcement officer and her application for a variance from § 113B.5 of the town zoning regulations (regulations). She contends that the board acted illegally in permitting an unseated alternate member to participate in both the public hearing and the board's deliberations thereon. We affirm the judgment of the Superior Court.

This appeal concerns the use of a mobile home on 29 Liberty Street in Chester (property), which is located in an R-1 residential district of the town and at all relevant times was owned by the plaintiff. Section 113B.5 of the regulations permits the temporary use of a mobile home on a property during the construction of a permanent dwelling. That regulation requires notification of such use to the zoning enforcement officer and expressly limits the use to a period of six months.[1]

---

[1] Titled "Temporary Use During Construction of Home," § 113B.5 provides: "When used, after notification to the Zoning Compliance Officer, as a temporary dwelling on premises of the owner thereof during construction of such owner's permanent dwelling upon the same premises, provided that such mobile home shall not remain upon said premises for more than six months from the time that it is first placed thereon; and provided such mobile home shall be connected to a water supply and sewage disposal system approved by the Town Director of Health in conformity with the requirements of the State Health Code and regulations enacted by the State Department of Health thereunder and to the requirements of any Town regulations pertaining thereto."

The property contained a 6531 square foot historic single-family residence, which a fire destroyed in March of 2005. Days later, the plaintiff, pursuant to § 113B.5, applied for a six month use permit to install a temporary mobile home on the property during the reconstruction of her home, which was granted on March 14, 2005. Approximately one year and four months later, Zoning Enforcement Officer Judith R. Brown issued a cease and desist order regarding the use of the mobile home on the property. In response, the plaintiff requested an extension of the permit originally issued in March, 2005, which Brown denied on August 25, 2006.

On August 28, 2006, the plaintiff filed an appeal with the board from both the cease and desist order and the denial of her request for an extension. In addition, the plaintiff applied for a variance from the "[six] months time limit" contained in § 113B.5.[2] The board held a public hearing on the plaintiff's applications on December 18, 2006. In attendance at that hearing were regular board members Mario Gioco, Jim Miller, Tom Englert and Mark Borton, and three alternate board members, Dan Bednarz, Theresa Myers and Andy Vomastek. Because only four regular members were present, Bednarz was seated pursuant to General Statutes § 8-5a.[3]

---

[2] Under Connecticut law, a property owner is permitted to simultaneously file with the zoning board of appeals a variance application and an appeal from the decision of the zoning enforcement officer. As this court has observed, "[t]he plain language of [General Statutes] § 8-6a clearly allows a party to file a bifurcated claim with a zoning board relying on both [General Statutes] § 8-6 (1) and § 8-6 (3) and requesting simultaneous relief under each of these subsections. Simply put, § 8-6a permits the concurrent filing of both an appeal from a zoning enforcement officer's ruling and a request for a variance. When a party applies for a review under both § 8-6 (1) and § 8-6 (3), § 8-6a specifically requires that a zoning board first decide the issues presented by the § 8-6 (1) application for a building permit. Should the board uphold the denial of the building permit, it must then act upon the § 8-6 (3) request for a variance of the zoning ordinance." *Miniter* v. *Zoning Board of Appeals*, 20 Conn. App. 302, 306, 566 A.2d 997 (1989). It is undisputed that the board complied with the foregoing in the present case.

[3] General Statutes § 8-5a, titled "Designation of alternate members to act," provides: "If a regular member of a zoning board of appeals is absent, he

After the public hearing concluded, the board deliberated the merits of the plaintiff's applications. The board then voted to deny both the appeal from the decisions of the zoning enforcement officer and the application for a variance from § 113B.5. From that decision, the plaintiff appealed to the Superior Court, which rendered judgment dismissing her appeal. In so doing, the court rejected the plaintiff's claim that the board acted illegally in allowing Myers, an unseated alternate, to participate in the public hearing and the board's deliberations. In addition, the court concluded that the board properly denied the variance application because the requisite hardship was lacking.[4]

On appeal to this court, the plaintiff challenges only the court's determination regarding Myers' participation in the public hearing and the board's deliberations. She does not challenge its determination that no unusual hardship existed to warrant a variance of the zoning regulations. Accordingly, we focus our attention on the propriety of Myers' involvement in the December 18, 2006 proceedings.

The record before us contains a transcript of the December 18, 2006 proceedings on the plaintiff's applications. It substantiates the court's finding that Myers was an alternate who, despite not being seated to act on the plaintiff's applications pursuant to § 8-5a, participated in both the public hearing and the subsequent deliberations of the board. During the public hearing, Myers asked more than a dozen questions, the majority

---

may designate an alternate from the panel of alternates to act in his place. If he fails to make such designation or if he is disqualified, the chairman of the board shall designate an alternate from such panel, choosing alternates in rotation so that they shall act as nearly equal a number of times as possible. If any alternate is not available in accordance with such rotation, such fact shall be recorded in the minutes of the meeting."

[4] In its August 17, 2009 memorandum of decision, the court also found that "[t]he mobile home remains on the property today, three and one-half years later, without the construction of the new house."

of which were directed at the plaintiff's husband, Christopher Komondy, who offered testimony in support of the plaintiff's applications. Her participation in the board's subsequent deliberations on the plaintiff's variance application was even more extensive.[5] The transcript of the deliberations thereon contains more than twenty separate statements by Myers.[6] Myers posed various questions to the town's attorney and articulated her opinion on various aspects of the variance at issue during those deliberations. For example, Myers expressed her view that "we have a larger obligation to the greater good if you want to call it that. And if we decide to write and grant a variance where we put limitations in, first of all, without knowing what enforcement is, what is the good of having a limitation or making a law or saying this is what's going to happen if we don't know (a) if we can enforce it and (b) how we're going to enforce it. And who's going to be responsible for . . . checking all this out and monitoring this, and, you know, we've already had months of delays and people in the town waiting on this decision as well as the applicant. You know, this could drag out to have a life of its own and by the time we're even getting to the point of figuring out how to handle it, the building could be gone or could be up, could be not, God knows what could happen in any part of this process in two to three years . . . ."

On the issue of hardship, Myers questioned whether this is "a financial hardship or a hardship with [the] land." When Gioco and Miller discussed potential conditions related to the timing of the reconstruction on the property, Myers opined that "it was a chronological argument, very well said, and, I mean, you could argue

---

[5] The transcript indicates that Myers did not participate in the deliberations on the appeal from the decisions of the zoning enforcement officer.

[6] In addition, the transcript is punctuated by numerous statements for which the identity of the speaker is referred to as "unknown."

either way, but that is not necessarily a solid grounding for a hardship." She concluded that statement by noting that "[y]ou can't talk yourself into a hardship, either it is a hardship or it isn't." Similarly, when another board member raised the possibility of attaching a condition to the variance that would limit the use of a mobile home on the property "by time," Myers stated that "then it's two months back, three months later, where do you just cut it off and stop the bleeding, I mean, when are you, obviously, we are all sympathetic, but you know what I mean. You let them go for two years and then they guarantee that they got three more months and then you're going to say, well, sorry, and then in three more months it's like, you know, the world fell apart, and it's going to take three or four more months. That's the problem with this . . . as much as we want to do this, that's the problem with this, how, where does it end; it ends when they're done, not when we decide to grant a variance." Near the end of the board's deliberations, Gioco, the board's chairman, opined that "really this . . . should have been handled by [the] planning and zoning [commission] because it is not clear . . . . Maybe we should give them the chance to fix it as opposed to us." In response, Myers stated that "if we really have gone through this whole process and decided that we shouldn't be hearing this and then we shouldn't have accepted the application. . . . We have heard it, it is on the books . . . I think *we have to make a decision.* I mean, if the applicants or if we want to talk to [the planning and zoning commission] about modifying [§ 113B.5] . . . but I don't think *we* can postpone *our decision* based on that . . . ." (Emphasis added.) Plainly, Myers was an active participant in the board's deliberations on the variance application.

I

The plaintiff claims that Myers' participation in the proceedings ran afoul of General Statutes § 8-5 (a), rendering the board's action on her applications illegal.

She argues that the plain language of that statute forbids an alternate member from participating in either the public hearing or board deliberations on an application unless that alternate has been seated pursuant to § 8-5a. Her claim presents a question of statutory construction, over which our review is plenary. See *Buttermilk Farms, LLC* v. *Planning & Zoning Commission*, 292 Conn. 317, 328, 973 A.2d 64 (2009).

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) Id. In addition, "common sense must be used in statutory interpretation, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) *Cannata* v. *Dept. of Environmental Protection*, 239 Conn. 124, 141, 680 A.2d 1329 (1996).

We thus begin with the language of the statute. Section 8-5 (a) provides in relevant part: "In each municipality having a zoning commission there shall be a zoning

board of appeals consisting of five regular members and three alternate members, unless otherwise provided by special act. Such alternate members, also referred to as 'the panel of alternates', shall, when seated as herein provided, have all the powers and duties set forth in the general statutes relating to zoning boards of appeals and their members. . . ." General Statutes § 8-6 (a) enumerates the "powers and duties" of a zoning board of appeals as follows: "(1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter; (2) to hear and decide all matters including special exceptions and special exemptions under section 8-2g upon which it is required to pass by the specific terms of the zoning bylaw, ordinance or regulation; and (3) to determine and vary the application of the zoning bylaws, ordinances or regulations . . . ."[7]

## A

The first question we must ask in considering the aforementioned statutory language is whether it precludes the participation of an unseated alternate in the public hearing portion of a board's proceedings. We conclude that it does not. While quite specific in other regards; see, e.g., General Statutes § 8-7 (requiring

---

[7] We note that General Statutes §§ 8-7, 8-7a, 8-7d and 8-11 also contain provisions pertaining to the activities of zoning boards of appeals. Those statutory provisions require, inter alia, the board to "state upon its records the reason for its decision"; General Statutes § 8-7; to ensure proper recordation of evidence submitted at public hearings; to publish notice of public hearings; to permit any person to "appear and be heard"; General Statutes § 8-7d (a); and further require the disqualification of any board member from "any matter in which he is directly or indirectly interested in a personal or financial sense." General Statutes § 8-11. Because none of those statutes bears on the issue of board member participation in public hearings or board deliberations, we focus our inquiry on §§ 8-5 (a) and 8-6 (a), as have the parties to this appeal.

board to "state upon its records the reason for its decision"); General Statutes § 8-7a (requiring evidence to be taken by stenographer or recording device); General Statutes § 8-7d (a) (requiring that "[a]ll applications and maps and documents relating thereto shall be open for public inspection" and permitting any person to "appear and be heard" at public hearing); our General Statutes do not prescribe any protocols or duties regarding the *participation* of board members in the public hearing. See generally R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 20:1, p. 556 ("[t]he general procedures followed by most land use agencies are similar, and acceptable procedures have evolved by custom and experience rather than from statutory requirements").

This legislative silence on the issue of participation by board members in the public hearing is understandable. Whether it is an appeal from a decision of the zoning enforcement officer, a variance application or another matter specified by statute, the burden rests with the applicant to demonstrate its entitlement to the requested relief. See, e.g., *Cumberland Farms, Inc.* v. *Zoning Board of Appeals*, 74 Conn. App. 622, 630, 814 A.2d 396 ("the board properly exercised its discretion in upholding the decision of the zoning enforcement officer [because] the plaintiff had not satisfied its burden of establishing the validity of the proposed gasoline station use as a preexisting, nonconforming use"), cert. denied, 263 Conn. 901, 819 A.2d 836 (2003); *Pike* v. *Zoning Board of Appeals*, 31 Conn. App. 270, 274, 624 A.2d 909 (1993) (applicant bears burden of demonstrating existence of hardship). It thus is incumbent on an applicant to provide an evidentiary basis, whether through testimony, documentation or a combination thereof, in support of its plea for relief. Under Connecticut law, active participation by board members in a public hearing is not statutorily required. Rather, it is

entirely permissible, if nevertheless uncommon,[8] for a board to passively observe the applicant's presentation without asking questions or otherwise making inquiry as to the specifics of the application. We are aware of no authority to the contrary, nor has the plaintiff provided any.

The plaintiff argues that the word "hear," as that term is used in the phrase to "hear and decide" contained in § 8-6 (a) (1) and (2), connotes active participation in public hearings. We disagree. Rather, we read that term as one indicating that the zoning board of appeals is the proper forum for certain appeals and matters as specified therein. Put differently, the term expresses the board's power to entertain such matters.

Such expression is necessary because zoning boards of appeal are creatures of statute, as every Connecticut municipality having a zoning commission is required to have a zoning board of appeals. General Statutes § 8-5 (a). They possess a limited authority, as circumscribed by statute, the scope of which cannot be enlarged or limited by either the board or the local zoning regulations. See *Langer* v. *Planning & Zoning Commission*, 163 Conn. 453, 458, 313 A.2d 44 (1972) (board's powers "stem directly from the statute" and "are not subject

---

[8] One commentator has described the typical public hearing as follows: "The applicant must be allowed to present documentary evidence and speakers supporting the application to build a record. After the applicant's presentation, the agency members *may* ask questions about the application and for input from the staff or consultants to the agency who are present. The chairman then generally asks if there are any other persons present who support the application. If so they are allowed to make or file statements in support of the proposal. . . . After that, opponents of the application are allowed to make statements and presentations against it or to ask questions of the applicant and its representatives. After the opponents conclude their remarks and the agency members ask other questions, the applicant is usually given the opportunity to rebut the opposition and make concluding remarks. The chairman then declares the hearing closed or suspends it to another date so that additional evidence can be presented." (Emphasis added.) 9 R. Fuller, supra, § 20:3, p. 558.

to restriction by provisions contained in the ordinance or amendments thereto"); *Bora* v. *Zoning Board of Appeals*, 161 Conn. 297, 302, 288 A.2d 89 (1971) (holding that board acted illegally by exceeding its power in granting variance); 2 P. Salkin, American Law of Zoning (5th Ed. 2010) § 13:27, p. 13-82 (zoning boards of appeal "are constrained by the limitations of the power granted to them by law"). As often is noted, "[s]ubject matter jurisdiction is the power of the court to *hear and determine* cases of the general class to which the proceedings in question belong. . . . The same principle applies to administrative agencies . . . including zoning authorities." (Citations omitted; emphasis added; internal quotation marks omitted.) *Lauer* v. *Zoning Commission*, 220 Conn. 455, 460, 600 A.2d 310 (1991); see also *Konover* v. *West Hartford*, 242 Conn. 727, 740–41, 699 A.2d 158 (1997) (no jurisdiction to act unless under precise circumstances and in manner particularly prescribed by enabling legislation); cf. *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals*, 140 Conn. 527, 531, 102 A.2d 316 (1953) (explaining that "[p]rior to 1947, the statutes did not specifically refer to . . . special exceptions [which] the General Assembly [recently] empowered zoning boards of appeal 'to hear and decide' "). By delineating precisely what matters properly may be acted upon by a zoning board of appeals, § 8-6 (a) sets forth the confines within which zoning boards of appeal operate.

In addition, we note that § 8-6 (a) (3) does not contain the particular language relied on by the plaintiff. If the plaintiff is correct in her contention that the term "hear," as it is used in the phrase to "hear and decide," constitutes active participation in public hearings, then its omission from § 8-6 (a) (3) suggests that the legislature, in enacting this statute, sought to vest in board members the power to actively participate in public hearings on the matters set forth in § 8-6 (a) (1) and

(2) but not in hearings where a variance is sought. The legislature could not have intended such a bizarre result. See *S.I.S. Enterprises, Inc.* v. *Zoning Board of Appeals*, 33 Conn. App. 281, 286, 635 A.2d 835 (1993) (principles of statutory construction require court to construe statutes in manner that will not lead to absurd results). That § 8-6 (a) concludes by providing that the board shall not be required "to hear any application for the same variance . . . for a period of six months after a decision by the board or by a court on an earlier such application" further indicates that the term "hear" refers to the board's power to entertain certain matters.

Common sense also persuades us that the legislature did not intend to preclude the participation of unseated alternate members in public hearings. The convening of a public hearing affords an opportunity for the applicant to demonstrate its entitlement to the requested relief and for other members of the community "to register their approval or disapproval and to state the reasons therefor." *Couch* v. *Zoning Commission*, 141 Conn. 349, 357, 106 A.2d 173 (1954); see also *Clifford* v. *Planning & Zoning Commission*, 280 Conn. 434, 443, 908 A.2d 1049 (2006) (purpose of local zoning body in holding public hearing is to afford opportunity to interested parties to make views known and to enable board to be guided thereby). Thus, the aim of the public hearing is to obtain any and all information relevant to the inquiry on hand, so as to facilitate the rendering of an informed decision by the board. See *Loh* v. *Town Plan & Zoning Commission*, 161 Conn. 32, 42, 282 A.2d 894 (1971) (board members must be sufficiently acquainted with issues raised and arguments presented at public hearing "in order to exercise an informed judgment"); *Strain* v. *Mims*, 123 Conn. 275, 282, 193 A. 754 (1937) ("[t]he purpose of the public hearing is, of course, to inform the members of the commission as to the reasons why the change should or should not be

made"); T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 405 ("the purpose of the hearing is to provide the board with information to improve the quality of its decision"). In light of that central aim, we perceive no good reason why unseated alternate members should be relegated to bystander status during public hearings. Indeed, we cannot envision any prejudice to an applicant resulting from their participation, particularly in light of the mandatory disqualification of any board member from "any matter in which he is directly or indirectly interested in a personal or financial sense." General Statutes § 8-11.

We also are mindful of the fact that an alternate member who is not seated for a public hearing may well be called on to act in the place of a regular member in the board's subsequent deliberations. It seems incongruous to vest in such an alternate the statutory power to decide the substantive matter before the board yet preclude that alternate from asking pertinent questions or otherwise commenting during the public hearing. Permitting that alternate to explore the merits of the application through participation in the public hearing contributes to the ultimate aim of an informed decision and assures that the applicant and other interested members of the community have the opportunity to address whatever concerns the alternate has regarding the application.

As a final matter, we note that a degree of deference generally is accorded to local land use agencies. See, e.g., *Fedorich* v. *Zoning Board of Appeals*, 178 Conn. 610, 614, 424 A.2d 289 (1979) ("because the local authority is closer to the circumstances and conditions which create the problem and shape its solution, zoning authorities are given wide discretion in determining public need and the means of meeting it"); *Couch* v. *Zoning Commission*, supra, 141 Conn. 359 ("[t]he history of zoning legislation indicates a clear intent on the

part of the General Assembly that, subject to certain underlying principles, the solution of zoning questions is for the local agencies"); *Megin* v. *Zoning Board of Appeals*, 106 Conn. App. 602, 607, 942 A.2d 511 (courts generally employ deferential standard of review to actions of zoning board), cert. denied, 289 Conn. 901, 957 A.2d 871 (2008). It is plausible, if not probable, that the legislature's silence on the issue of board member participation in public hearings simply reflects a willingness to let local agencies fashion their own protocols or duties related thereto.

In sum, a review of our General Statutes reveals that they do not address the issue of board member participation in the public hearing. Mindful that we must avoid a construction that fails to attain a rational and sensible result; see *S.I.S. Enterprises, Inc.* v. *Zoning Board of Appeals*, supra, 33 Conn. App. 286; we reject the plaintiff's interpretation of § 8-5 (a). Because participation in the public hearing is neither a power nor duty set forth in the General Statutes relating to zoning boards of appeal and their members, we cannot accept the plaintiff's contention that Myers' participation in the December 18, 2006 public hearing contravened the plain language of § 8-5 (a).

B

We next turn our attention to whether the statutory language at issue precludes the participation of an unseated alternate in the board's deliberations. We answer that query in the affirmative.

Section 8-6 (a) vests the board with the power to "decide" certain matters and to "determine and vary the application of the zoning bylaws, ordinances or regulations . . . ." The board accomplishes those tasks by engaging in deliberations following the close of the public hearing. See, e.g., *Hescock* v. *Zoning Board of Appeals*, 112 Conn. App. 239, 246–47, 962 A.2d 177

(2009) (reviewing portions of transcript of both "the public hearing" and "the board's decision-making process").

One judge who considered the question before us analogized the unseated alternate board member to an alternate juror. See *Weiner* v. *Zoning Commission*, Superior Court, judicial district of Litchfield, Docket No. CV-94-0066607 (May 23, 1995) (*Pickett, J.*) (14 Conn. L. Rptr. 245). The comparison is apt. To deliberate is to "weigh, ponder, discuss, regard upon, consider . . . to weigh in the mind; to consider the reasons for and against." (Internal quotation marks omitted.) *State* v. *Washington*, 182 Conn. 419, 428, 438 A.2d 1144 (1980). Just as deliberation is "the process by which a jury reaches a verdict, as by analyzing, discussing, and weighing the evidence"; Black's Law Dictionary (9th Ed. 2009) p. 492; the act of deliberating is the process by which the board reaches its decision.[9]

For good reason, the General Assembly has seen fit to require alternate jurors in civil and criminal cases alike to "be segregated from the regular panel . . . when the case is given to the regular panel for deliberation . . . ." General Statutes §§ 51-243 (e) and 54-82h

---

[9] We emphasize that the analogy to alternate jurors pertains to the sanctity of the decision-making process and do not suggest that the proceedings of a zoning board of appeals otherwise are comparable to the work of a jury in judicial proceedings. Plainly, local land use proceedings are informal and transpire without regard to strict rules of evidence; see *Megin* v. *Zoning Board of Appeals*, supra, 106 Conn. App. 608; due in large measure to the fact that such proceedings are conducted by boards "comprised of citizens from all walks of life, serving their communities on a voluntary basis . . . who may not always express themselves with the nicety of a Philadelphia lawyer." (Internal quotation marks omitted.) *Anatra* v. *Zoning Board of Appeals*, 127 Conn. App. 125, 145, 14 A.3d 386 (2011) (*Gruendel, J.*, concurring). Similarly, our Supreme Court has explained that the procedural right involved in such administrative proceedings properly is described as a right to fundamental fairness, as distinguished from the due process rights implicated in judicial proceedings. *Grimes* v. *Conservation Commission*, 243 Conn. 266, 273 n.11, 703 A.2d 101 (1997).

(c). "[T]he primary if not exclusive purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence." *United States* v. *Olano*, 507 U.S. 725, 737–38, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); see also *Turk* v. *Silberstein*, 48 Conn. App. 223, 224 n.1, 709 A.2d 578 (1998) ("[t]he risks involved in allowing an alternate to sit in during deliberations are obvious"). Participation by an unseated alternate tarnishes the jury's deliberations. See *State* v. *Murray*, 254 Conn. 472, 495, 757 A.2d 578 (2000) (en banc) (jury deliberations tarnished when jurors come into contact with outside influences). Similarly, the participation of an unseated alternate tarnishes the deliberations of a zoning board of appeals, as it permits one not authorized to vote on the matter before the board to nevertheless pass on the merits thereof. See *Clifford Development Corp.* v. *Zoning Commission*, Superior Court, judicial district of Litchfield, Docket No. CV-95-0068705 (May 17, 1996) ("[a]n alternate member of the agency who is not needed for the vote should not participate in the deliberations"); 9 R. Fuller, supra, § 21:4, p. 606 (same). The unseated alternate's participation, whether by design or inadvertence, injects an improper influence into the board's decision-making process.

That the board's decision-making process includes its deliberations is evidenced by the linguistic distinction contained in the plain language of §§ 8-5 (a) and 8-6 (a). Section 8-5 (a) provides in relevant part that "[t]he board shall keep minutes of its proceedings showing the *vote* of each member and each alternate member when seated upon each question . . . ." (Emphasis added.) By contrast, § 8-6 (a), in enumerating the powers and duties of the zoning board of appeals, states that it is authorized to "decide" and to "determine" the specified matters. It is well established that, in construing statutory language, "[n]o part of a legislative enactment is to be treated as insignificant or unnecessary,

and there is a presumption of purpose behind every sentence, clause or phrase . . . and no word in a statute is to be treated as superfluous." (Internal quotation marks omitted.) *State* v. *Anderson*, 227 Conn. 518, 528, 631 A.2d 1149 (1993); see also *Vibert* v. *Board of Education*, 260 Conn. 167, 176, 793 A.2d 1076 (2002) (every word in statute presumed to have meaning). Our interpretation thus must give meaning to that distinction. Had the legislature intended to permit the participation of unseated alternates in the board's deliberations on an application but to preclude their involvement in the vote thereon, it simply could have used the term "vote" in § 8-6 (a), as it did in § 8-5 (a). That the legislature instead utilized "decide" and "determine" to describe the powers and duties of the board indicates that the board's power in this regard includes something other than simply voting on a particular matter. Our objective in construing statutory language is to give effect to the apparent intent of the legislature. *Buttermilk Farms, LLC* v. *Planning & Zoning Commission*, supra, 292 Conn. 328. We conclude that the apparent intent of the legislature was to include the deliberations of a zoning board of appeals among the powers and duties set forth in § 8-6 (a).

Because under § 8-5 (a) only alternate members seated pursuant to § 8-5a possess the powers and duties set forth in § 8-6 (a), § 8-5 (a) precludes the participation of an unseated alternate in board deliberations following the close of the public hearing. We therefore agree with the plaintiff that Myers improperly participated in the deliberations on the variance application.

## II

That conclusion does not end our inquiry. We also must determine whether that impropriety mandates a reversal of the judgment of the Superior Court dismissing the plaintiff's appeal.

A

At the outset, we note that the court employed, in essence, a harmlessness test in evaluating Myers' conduct. It determined that although Myers "was an alternate that was not seated," her participation in the board's deliberations did not have a profound effect on the voting members. Three other Superior Court judges have employed a similar test. See *Optiwind* v. *Planning & Zoning Commission*, Superior Court, judicial district of Litchfield, Docket No. CV-08-4007819-S (September 15, 2010) (*Roche, J.*) (limited participation of unseated alternate "did not have a profound effect on the deliberations"); *Winston* v. *Zoning Board of Appeals*, Superior Court, judicial district of Litchfield, Docket No. CV-04-0092297-S (January 6, 2005) (*Bozzuto, J.*) ("[t]he record is devoid of any evidence that the alternate . . . had any sort of 'profound' [e]ffect upon the voting members"); *Weiner* v. *Zoning Commission*, supra, 14 Conn. L. Rptr. 246 (concluding that unseated alternate "had a profound effect upon the deliberation").

The "profound effect" test adopted in those cases is akin to the standard utilized in *Murach* v. *Planning & Zoning Commission*, 196 Conn. 192, 491 A.2d 1058 (1985), in which a salaried member of the local fire department who statutorily was proscribed from membership on the local planning and zoning commission participated in the approval of a zone reclassification. Id., 200. In considering "the legal effect" of his participation; id.; our Supreme Court explained that "we have not always adhered to a per se rule of invalidation when a member of a board or commission had a conflict of interest that should have counseled disqualification in a matter upon which the member should not have participated." Id., 202. Instead, the court indicated that the burden rested with the appellant property owner "to show that [the improper member's] disqualification

tainted the entire proceeding . . . ." Id., 204; see also *Grimes* v. *Conservation Commission*, 243 Conn. 266, 278, 703 A.2d 101 (1997) ("the burden is on the plaintiff to show that the commission acted improperly"). The court continued: "[N]ot all procedural irregularities require a reviewing court to set aside an administrative decision; *material prejudice* to the complaining party must be shown." (Emphasis added; internal quotation marks omitted.) *Murach* v. *Planning & Zoning Commission*, supra, 205; accord *Anziano* v. *Board of Police Commissioners*, 229 Conn. 703, 713, 643 A.2d 865 (1994) ("a demonstration of procedural irregularities would not require us to set aside the board's decision in the absence of a showing of material prejudice"); *Owens* v. *New Britain General Hospital*, 32 Conn. App. 56, 69 n.5, 627 A.2d 1373 (1993) ("[a]n administrative proceeding is not 'tainted' by procedural irregularities unless substantial rights of the parties have been prejudiced"), aff'd, 229 Conn. 592, 643 A.2d 233 (1994). Because the disqualified member's "role in this matter was minimal" and "he made no attempt to influence or sway the other members of the commission"; (internal quotation marks omitted) *Murach* v. *Planning & Zoning Commission*, supra, 204; the court concluded that the appellants failed to demonstrate any resulting prejudice. Id., 206.

A similar standard is employed in the context of juror misconduct. In evaluating the intrusion of an alternate into a jury's deliberations, our Supreme Court has noted that "prejudice will . . . be presumed [where] an alternate juror actually participated in jury deliberations." *State* v. *West*, 274 Conn. 605, 651, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005), citing *United States* v. *Olano*, supra, 507 U.S. 739–41. At the same time, that presumption may be rebutted by evidence that no harm resulted from the participation of the alternate. *State* v. *West*, supra, 650–51.

In our view, the proper measure to evaluate the participation of an unseated alternate in a board's deliberations is an inquiry into whether the participation resulted in material prejudice to the applicant.[10] See *Murach v. Planning & Zoning Commission*, supra, 196 Conn. 205. Among the factors relevant to that inquiry is a determination of whether the participation impacted the board's decision-making process. See *Weiner v. Zoning Commission*, supra, 14 Conn. L. Rptr. 246 (concluding that unseated alternate "had a profound effect upon the deliberation"). Also relevant is the frequency and severity of the unseated alternate's participation. Cf. *State v. Stevenson*, 269 Conn. 563, 573, 849 A.2d 626 (2004) (evaluation of claims of prosecutorial impropriety includes inquiry as to frequency and severity of misconduct); *State v. Joyner*, 225 Conn. 450, 473, 625 A.2d 791 (1993) (prosecutor's single questionable statement will not, in all probability, impair effectiveness or integrity of defendant's trial); *State v. Orellana*, 89 Conn. App. 71, 105, 872 A.2d 506 (isolated misstatement not prosecutorial impropriety), cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005). Though not dispositive, a finding that the alternate's participation was minimal militates against a finding of material prejudice. *Murach v. Planning & Zoning Commission*, supra, 204; see also *Optiwind v. Planning & Zoning Commission*, supra, Superior Court, Docket No. CV-08-4007819-S (unseated alternate's "limited participation" consisted of "two short statements"); *Winston v. Zoning Board of Appeals*, supra, Superior Court, Docket No. CV-04-0092297-S (unseated alternate made only one comment during deliberations that was consistent with sentiments of other members). In addition, apart from

---

[10] In light of our conclusion in part I B of this opinion, we emphasize that the participation of an unseated alternate in the board's deliberations is not to be condoned. Even if that participation ultimately is deemed harmless, it nevertheless raises the specter of impropriety. For that reason, the prudent course is to prohibit such participation in all instances.

the persuasiveness of the unseated alternate's participation is the question of whether that alternate *attempted* "to influence or sway the other members" of the board. (Internal quotation marks omitted.) *Murach* v. *Planning & Zoning Commission,* supra, 204. The aforementioned factors are not exclusive, but rather are cornerstones of an inquiry into whether an unseated alternate's participation in the board's deliberations resulted in material prejudice.

## B

Having clarified that standard, the present case nevertheless does not require its application. The record indicates that Myers participated only in the deliberations on the plaintiff's variance request. Although that participation was improper, it remains that the court determined that no unusual hardship existed to warrant a variance from § 113B.5 of the regulations. "Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance." *Bloom* v. *Zoning Board of Appeals,* 233 Conn. 198, 207–208, 658 A.2d 559 (1995); see also *Ward* v. *Zoning Board of Appeals,* 153 Conn. 141, 143, 215 A.2d 104 (1965) ("[t]he hardship requirement is a fundamental one in zoning law"). The plaintiff has not challenged the court's determination that the requisite hardship was lacking. "This court does not presume error on the part of the trial court; error must be demonstrated by an appellant . . . ." *State* v. *Tocco,* 120 Conn. App. 768, 781 n.5, 993 A.2d 989, cert. denied, 297 Conn. 917, 996 A.2d 279 (2010). Thus, irrespective of the impropriety of Myers' participation in the board's deliberations, we must conclude that the court properly dismissed the plaintiff's appeal.

The judgment is affirmed.

In this opinion the other judges concurred.