IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THE CITY OF LEWES and THE BOARD OF ADJUSTMENT OF THE CITY OF LEWES, | § § § | |
| | § | Nos. 348 & 349, 2018 |
| Appellees Below, | § | |
| Appellants, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. S17A-06-003 |
| ERNEST M. NEPA and DEBORAH A. NEPA, | § § | |
| | § | |
| Appellants Below, | § | |
| Appellees. | § | |

Submitted: March 27, 2019
Decided: June 10, 2019

Before **STRINE**, Chief Justice; **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices; **GLASSCOCK**, Vice Chancellor,* constituting the Court *en Banc*.

Upon Appeal from the Superior Court of the State of Delaware: **REVERSED**.

Glenn C. Mandalas, Esquire, and Daniel F. McAllister, Esquire (*argued*), Baird Mandalas Brockstedt, LLC, Dover, Delaware, for Appellee Below, Appellant The City of Lewes.

Michael J. Hoffman, Esquire (*argued*), Tarabicos Grosso, LLP, New Castle, Delaware, for Appellee Below, Appellant Board of Adjustment of The City of Lewes.

Kyle F. Dunkle, Esquire (*argued*), and Mark. F. Dunkle, Esquire, Parkowski, Guerke & Swayze, P.A., Dover, Delaware, for Appellants Below, Appellees Ernest M. Nepa and Deborah A. Nepa.

* Sitting by designation under Del. Const. art. IV, § 12.

**SEITZ**, Justice, for the majority:

The City of Lewes and its Historic Preservation Commission approved Ernest and Deborah Nepa's plans to renovate a house in the historic district. The Nepas violated the conditions of the approvals by building a two story addition on the back of the house and increasing its already nonconforming setbacks from neighboring properties. After the City discovered the violations and issued a stop work order, the Nepas applied to the City's board of adjustment for three area variances to complete the unauthorized addition. The board turned them down.

The Nepas appealed the variance denials to the Superior Court, arguing that the City Code provision used by the board to evaluate their variance applications conflicted with a more lenient state law addressing municipal variances. The Superior Court agreed and reversed the board's decision. According to the court, the City could not require stricter variance requirements than those in state law "unless there is statutory authority granting such, as the municipality must conform with standards established by the General Assembly."[1] Because the state law addressing municipal variances had more lenient requirements than those in the City Code, the City Code was "*ultra vires* and cannot be applied."[2]

---

[1] *Nepa v. Bd. of Adjustment of City of Lewes*, 2018 WL 1895699, at *8 (Del. Super. Apr. 11, 2018).
[2] *Id.* at *9.

2

On appeal, the City argues that the Superior Court erred because the state statute the court relied on—22 *Del. C.* § 327(a)(3)—does not require municipal boards of adjustment to grant variances.  Instead, the state statute only sets minimum requirements that must be met before a municipality, through its board of adjustment, may grant a variance.  Stated differently, the state statute only prohibits the City from loosening the state law requirements for granting a variance.  The City is thus free to require stricter standards.

We agree with the City and reverse the Superior Court's decision.  The City can adopt land use regulations as broad as those that might be adopted by the State as long as the City's regulations do not conflict with state law.  The state statute the Superior Court found conflicted with the City Code states that the board "may" grant a variance under specified conditions.  The permissive nature of the statute makes it clear that the state statute sets a floor and not a ceiling for the City to honor.  As long as the variance standards applied by the City of Lewes' board of adjustment meet the minimum state statutory standards, nothing in the state statute prohibits the City, through its board of adjustment, from applying variance standards stricter than those set by the State.

**I.**

The facts are largely undisputed and are taken from the Superior Court decision.  The Nepas own a lot with a two and one-half story house in the City of

3

Lewes. The property is legally nonconforming under the City Code because the house does not meet the Code's current setback requirements. When the Nepas purchased the property, they knew it was nonconforming, but purchased it as an investment property to renovate and sell.

The City and the Historic Area Commission approved the Nepas' renovation applications, which did not include an increase in house size or the encroachment into the setbacks. While renovating the house, the Nepas discovered insect damage. Then a rainstorm caused the back roof to collapse. Without informing the City or applying to modify their approvals, the Nepas decided to change course and build a two story addition on the back of the house, which increased the house size and expanded the already nonconforming encroachment.

A Lewes building officer discovered the violations and issued a stop-work order. After waiting almost a year, the Nepas applied for three variances with the City's board of adjustment to continue their unapproved work. The Nepas justified the variance requests on two grounds: the need to lift the stop work order and to improve the home's marketability because it would allow the eventual occupants to age in place—a modern trend in housing.

The City's board of adjustment denied the variances. According to the board, the Nepas had not demonstrated an exceptional practical difficulty in complying with the City Zoning Code requirements—a standard the Nepas had to meet to be

4

entitled to the variances.[3] The board found that the property was not unique and the variances would "represent a deviation from the spirit and intent of the Zoning Code."[4] While recognizing the City's goal of promoting aging in place, the board did not believe all the requested variances were needed for this purpose.[5] Finally, the board found the difficulties faced during construction were self-created as a result of the Nepas' failure to follow proper procedure.

The Nepas appealed the board's decision to the Superior Court, claiming that the board erred by applying stricter standards for variance applications than those authorized by the state statute governing municipal boards of adjustment—22 *Del. C.* § 327(a)(3). According to the Nepas, because the state statute had more lenient requirements for granting a variance, and state law typically controls when it conflicts with local law, the City and its board could not impose stricter requirements.

The City responded with two main arguments. First, the City Code variance requirements were consistent with, and not stricter than, the state statute governing municipal boards of adjustment. And second, even if the City Code standards were stricter than state law, § 327(a)(3) did not prohibit the City from imposing stricter

---

[3] App. to Opening Br. at A116 (Board of Adjustment Decision).
[4] *Id.*
[5] *Id.* at A117.

5

variance standards because the state statute set only minimum requirements for variance grants.

The Superior Court agreed with the Nepas. It first decided that the City Code imposed stricter requirements for variance grants than 22 *Del. C.* § 327(a)(3) and court decisions interpreting the statute. The court next decided that the City Code's stricter requirements conflicted with the state statute's more lenient requirements. According to the court, when a conflict occurs, and state law does not authorize the City's specific code provision, state law typically controls. Thus, the City's stricter standards could not be applied to the Nepas' variance application. The Superior Court reversed the board's decision.

## II.

### A.

This appeal presents a question of statutory interpretation, which we review *de novo.*[6] Looking first at state law, under Article II § 25 of the Delaware Constitution:

> The General Assembly may enact laws under which municipalities [and counties] may adopt zoning ordinances, laws or rules limiting and restricting to specified districts and regulating therein buildings and structures according to their construction and the nature and extent of their use, as well as the use to be made of land in such districts for other than agricultural purposes; and the exercise of such authority shall be deemed to be within the police power of the State.

---

[6] *Bd. of Adjustment of Sussex Cnty. v. Verleysen*, 36 A.3d 326, 329 (Del. 2012).

Section 25 "delegate[s] the zoning powers of the state to the counties and municipalities."[7]  By statute, the State has delegated to municipalities broad power to regulate land use "to promote health and the public welfare" and to further other public interests such as preventing "undue concentration of population," preventing the "overcrowding of land," " provid[ing] adequate light and air," and "facilitat[ing] the adequate provision of transportation, water, sewerage, schools, parks and other requirements."[8]

The delegated land use regulatory authority typically extends to the outer boundary of the State's authority, subject to any express or implied preemption by other state law.[9]  Even when preemption occurs, however, the State anticipated that municipalities might adopt stricter land use requirements than those in state or local law.  When the municipality adopts "higher standards than are required in any other statute or local ordinance or regulation, the regulations made under authority of this chapter shall govern."[10]  In other words, although conflicting state statutes typically

---

[7] Randy J. Holland, *The Delaware State Constitution* 128 (2d ed. 2017).  *See also Simon v. Town of Seaford*, 197 A. 681, 685 (Del. 1938) ("It is well settled in this State that a municipal corporation has no power except by express legislative grant, or by fair and necessary implication because of being incident to the powers expressly granted or essential to carrying them out.").

[8] 22 *Del. C*. § 303.

[9] *Cantinca v. Fontana*, 884 A.2d 468, 473 (Del. 2005) (*quoting State v. Putman*, 552 A.2d 147, 1249 (Del. Super. 1988)) ("In Delaware, the State and its political subdivisions are permitted to enact similar provisions and regulations, so long as the two regulations do not conflict. But 'where [a] conflict exists between a state statute and a municipal ordinance, the statute must always prevail.'").

[10] 22 *Del. C*. § 307.

preempt conflicting laws adopted by municipalities, when the municipality enacts land use ordinances and regulations requiring stricter standards than other state and local laws, the municipality's stricter standards govern.

State and local land use regulations promote the public interest by establishing uniform land development and use standards. There are situations, however, when a departure from a broad land use regulatory scheme might be warranted. One example is where literal application of zoning ordinances would cause practical difficulties to a specific property owner, and granting a variance from those requirements would not harm the public interest. To address requests for variances from land use laws, the State has delegated to municipalities the authority to hear variance applications through boards of adjustment. Under state law,

(a) The board of adjustment may:
…

(3) Authorize, in specific cases, such variance from any zoning ordinance, code, or regulation that will not be contrary to the public interest, where, owing to the special conditions or exceptional situations, a literal interpretation of any zoning ordinances, code or regulation will result in unnecessary hardship or exceptional practical difficulties to the owner of property so that the spirit of the ordinance, code or regulation shall be observed and substantial justice done, provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of any zoning ordinance, code, regulation or map….[11]

---

[11] 22 *Del. C.* § 327(a) (3). The board is also authorized to hear other applications, such as appeals from administrative enforcement actions and special exceptions. *Id*. at § 327(a)(2) and (3).

The state statute makes clear that boards of adjustment may grant variances only when "special conditions" or "exceptional situations" exist that cause "unnecessary hardship" or "exceptional practical difficulties." In *Board of Adjustment of New Castle County v. Kwik-Check Reality, Inc.*,[12] involving a comparable statute for a county board of adjustment, we noted the distinction between two types of variances—use and area variances. A use variance "changes the character of the zoned district by permitting an otherwise proscribed use"[13] while "an area variance concerns only the practical difficulty in using the particular property for a permitted use."[14] Thus, "given the differing purposes and effects of the two types of variance," the more rigorous "unnecessary hardship" standard applies to use variances and the "lesser standard of the owner's 'exceptional practical difficulties' is appropriate for obtaining an area variance."[15]

## B.

Turning to the City of Lewes and its land use laws, the City exercised its authority under state law and its Charter to adopt a zoning code and to create a board of adjustment.[16] Also, as authorized by state law, the City has adopted "rules and

---

[12] 389 A.2d 1289 (Del. 1978).

[13] *Id*. at 1291 (citing 3 Anderson *American Law of Zoning*, § 14.45 et seq. (1968)).

[14] *Id*. (citing 2 Rathkopf, *The Law of Zoning & Planning*, 45-2 (1973 Supp.)).

[15] *Id*.

[16] 22 Del. C. § 802; Lewes, Del., C. (Charter)§ 29, 29(23) ("Not by way of limitation upon the power vested in the City Council to exercise all powers delegated by this Charter to the municipal corporation except as may expressly appear herein to the contrary, but, rather, by way of

regulations" under which the board operates.[17]  According to § 197-92 of the City

Code, "[r]elief from the strict application of the provisions of" the City Code—a

variance—may be granted by the board "when, owing to special conditions or

exceptional situations, a literal interpretation of this chapter will result in exceptional

practical difficulties to the property owner."[18]  The board must make "required

findings" by "applying 22 *Del*. *C*. § 327(a)(3)."[19]  Under the City Code, the applicant

must satisfy the following criteria:

---

enumeration and for purposes of clarity, the City Council is vested by this Charter with the following powers, to be exercised by said City Council in the interest of good government and the safety, health and welfare of the City, its inhabitants and affairs, that is to say, … 23.  For the prevention of fire and the preservation of the beauty of the City, to regulate and control the manner of building or removal of dwelling houses and other buildings; to establish a code for the same and to provide for the granting of permits for the same; to establish a building line for buildings to be erected; zone or district the City and make particular provisions for particular zones of districts with regard to building or building materials; and, generally to exercise all the powers and authorities vested in the legislative body of cities and incorporated towns under and by virtue of 22 Del. C. § 301 et seq., and all amendments thereto."). *See also id.* at § 38 ("For the purpose of protection against fire, promoting health, safety, morals or the general welfare of the community, the City Council is hereby empowered to adopt ordinances to regulate and restrict the height, number of stores, size of buildings and other structures, the density of population and the location and use of buildings, structures and lands for trade, industry, residence or other purposes, and this power shall embrace new buildings or additions to or alterations of existing structures of every kind; to condemn buildings or structures, or portions thereof, that constitute a fire menace and to require or cause same to be torn down, removed or so altered as to eliminate the menace of fires; to prescribe the height and thickness of any building and the kind and grade of materials used in the construction thereof.").

[17] 22 *Del*. *C*. § 321 ("The legislative body of cities or incorporated towns shall provide for the appointment of a board to be known as the board of adjustment and *in the rules and regulations adopted pursuant to the authority of this chapter* shall provide that the board may, in appropriate cases and subject to appropriate conditions and safeguards make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained.") (emphasis added).

[18] City of Lewes Zoning Code § 197-92.

[19] *Id*.

(1) The variance relates to a specific parcel of land, and the hardship is not shared generally by other properties in the same zoning district and vicinity.
(2) The variance can be granted without substantial detriment to the public good.
(3) The benefits from granting the variance would substantially outweigh any detriment.
(4) Approval of the variance would not substantially impair the intent and purposes of the Comprehensive Plan or this chapter.[20]

In addition to these requirements, the board of adjustment must also "consider the following factors in reaching its decision on each variance application:"

(1) Nature of the zone where the property lies.
(2) Character of the immediate vicinity.
(3) Whether the restrictions, if lifted, would affect neighboring properties and uses.
(4) Whether the restriction would tend to create a hardship on the owner in relation to normal improvements.[21]

## III.

### A.

We first address a threshold argument raised by the Nepas—whether the City had the authority to adopt *any* variance requirements to be applied by its board of adjustment. The Nepas argue that the state statute authorizing the City's board of adjustment contains the exclusive requirements for granting variances, and thus the City was not authorized to adopt any of its own requirements.

---

[20] *Id.*
[21] *Id.*

11

The argument is unpersuasive for several reasons. First, Section 23 of the City Charter authorizes the City "generally to exercise all the powers and authorities vested in the legislative body of cities and incorporated towns under and by virtue of 22 Del. C. § 301 et seq., and all amendments thereto." Under 22 *Del. C.* § 321, which addresses the creation and powers of municipal boards of adjustment, the State has authorized municipalities to adopt their own laws governing their boards of adjustment. The "legislative bodies of cities or incorporated towns" are authorized to adopt "rules and regulations" for boards of adjustment "pursuant to the authority under [Chapter 3] …." Section 197-92 of the City Code adopts the "rules and regulations" to be applied by the City's board of adjustment when evaluating variances applications.[22] And second, 22 *Del. C.* § 304 allows a municipality to "provide for the manner in which" its land use "regulations and restrictions . . . shall be enforced." The standards dictated by the City to its board is one manner in which the City enforces its zoning regulations. Thus, the City has the authority under state law and its Charter to enact rules and regulations for its board of adjustment.

---

[22] We respectfully disagree with our concurring colleague that the State's delegation of power to municipalities to enact rules and regulations for their boards of adjustment is limited to special exceptions. As the dissent recognizes, the State's delegation of land use regulatory authority to the City under Chapter 3 is "broad" and should be "liberally construed." Concurring Op. at 1. By using the words "*in* the rules and regulations adopted pursuant to the authority of this chapter" the General Assembly necessarily meant that a municipal legislative body can adopt rules and regulations for its board of adjustment. Then, *within* those rules and regulations, the municipal legislative body must provide for special exceptions.

B.

The second issue on appeal is whether the Lewes City Code § 197-92 requires stricter standards for granting area variances than state law, 22 *Del. C.* § 327(a)(3). The City argues that, despite some differences in wording, the requirements are effectively the same. We agree with the Superior Court, however, that the City Code has stricter standards for granting variances than those in state law.

The City Code partially tracks the area variance requirements described in *Kwik-Check*,[23] which interpreted a comparable state statute.[24] Under *Kwik-Check* and the City Code, the board must weigh four factors to determine whether an exceptional practical difficulty is present: (1) the nature of the zone in which the property is located, (2) the character and uses of the immediate vicinity, (3) whether, if the restrictions are removed, there would be a serious effect on neighborhood property and uses, and (4) if the restrictions are not removed whether there would be a hardship to the owner to make normal improvements allowed for the use permitted.[25] Under § 327(a)(3) the relief must also not create "substantial detriment

---

[23] 389 A.2d at 1291.
[24] In fact, as the Superior Court points out, after we issued our *Kwik-Check* decision, the General Assembly modified 22 *Del. C.* § 327(a)(3)'s language to be nearly identical to the language at issue in *Kwik-Check*. *See Nepa v. Bd. of Adjustment of City of Lewes*, 2018 WL 1895699, at *4 (Del. Super. Apr. 11, 2018) ("[T]he General Assembly changed the statute granting power to municipal Boards of Adjustments to render it identical to the statute examined in *Kwik–Check*.").
[25] *Id.*; City of Lewes Zoning Code § 197-92.

to the public good" and not "impair[] the intent and purpose of any zoning ordinance."[26]

But that is where the similarity with the state statute and our decision in *Kwik-Check* ends. The City Code also requires that the hardship to the applicant be unique to the property ("not shared generally by other properties"). Although uniqueness is a relevant inquiry under state law,[27] neither § 327 nor *Kwik-Check* require such a finding. Further, the City made two of the *Kwik-Check* factors more stringent. First, under the City Code, *any* effect on neighboring properties must be considered, in contrast to the state standard of *seriously* affecting those properties.[28] And, the City Code requires that the board find that "[t]he benefits from granting the variance would *substantially* outweigh any detriment" to the public good.[29] Under § 327(a)(3), the variance need only be in harmony with the public interest.

Finally, the City Code expressly acknowledges that it imposes conditions beyond those required by state law. Under the City Code there are "[a]dditional standards," one of which is eliminating a property's nonconforming status as a ground for a variance.[30] Thus, the Superior Court correctly determined that the

---

[26] 22 *Del. C.* § 327(a)(3).

[27] *See, e.g.*, *Snyder v. New Castle Cnty.*, 135 A.3d 763, 2016 WL 1375393 (Del. Apr. 5, 2016) (TABLE).

[28] City of Lewes Zoning Code § 197-92 ("Whether the restrictions, if lifted, would affect neighboring properties and uses").

[29] *Id.*

[30] *Id.*

14

board "(1) used a heightened exceptional practical difficulty test by requiring the benefit to the Nepas in granting the variances to substantially outweigh the detriment to the neighboring properties, (2) imposed a 'uniqueness' requirement not required by *Kwik–Check*, and (3) excluded nonconformity as a reason for granting a variance."[31]

## C.

We now reach the crux of this appeal—whether the Superior Court correctly concluded that the City's stricter variance standards are in conflict with state law and therefore invalid. The City argues first that the Superior Court failed to address a state statute, 22 *Del. C.* § 307, which resolves any conflict between state and municipal land use law in favor of the City. In its view, § 307 expressly recognizes that, when a municipality adopts stricter land use standards than those in state law, the municipality's stricter standards govern. In the alternative, according to the City, even if § 307 does not apply to municipal variance requirements, § 327(a) does not require that the board grant any variance. Rather, by use of the permissive word "may" instead of the mandatory word "shall" when referring to a variance grant, the state statute does not require any variance to be granted and thus dictates only minimum requirements before a board grants a variance. Under this interpretation, the City is free to require stricter standards before granting a variance.

---

[31] *Nepa*, 2018 WL 1895699, at *8.

15

The Nepas respond that § 307 of state law only applies to dimensional land use standards and not to standards for granting variances. Further, according to the Nepas, the General Assembly intended § 327(a) to be exclusive of any requirements that municipal boards of adjustment might apply. In support of their argument, the Nepas note that in § 327(a)(2) the General Assembly expressly authorized municipalities to establish their own standard for special exceptions, in contrast to their treatment of variances in § 327(a)(3).[32]

The Nepas also argue that two amendments to the statute in 1985 and 2008 show that the State sought to limit the board's authority. The 1985 amendment adopted the "exceptional practical difficulties" language from our decision in *Kwik-Check*, but did not require any findings by the board outside the *Kwik-Check* factors. And the 2008 amendment allowed municipalities a more streamlined method of approving nominal variances of less than one foot. According to the Nepas, these amendments suggest that the General Assembly "intended to reserve unto itself the exclusive authority to establish the jurisdictional powers of municipal boards of adjustment."[33]

---

[32] *See* 22 *Del. C.* § 327(a)(2) (The board may "[h]ear and decide special exceptions to the terms of the ordinance upon which the board is required to pass under such ordinance").
[33] Answering Br. at 20.

We conclude that, without reaching the City's argument under § 307,[34] § 327(a) is permissive only and sets minimum standards, meaning the City of Lewes can adopt stricter variance review standards than the standards set forth in state law. As noted earlier, when a conflict arises between a state statute and municipal ordinance, the state statute ordinarily prevails.[35] Whether a conflict exists is ascertained by looking at legislative intent—did the General Assembly intend to preempt local law either expressly or by implication. Intent to preempt is implied when the local law is either inconsistent with the state statute or hinders its objective.[36]

Under § 327(a), boards of adjustment *may* grant variances when "special conditions" or "exceptional situations" exist that cause "unnecessary hardship" or "exceptional practical difficulties." By its use of highly restrictive language, the General Assembly made clear that variances from uniform land use planning laws should be treated as the exception and not the rule. Unlike other parts of Chapter 3

---

[34] Section 307 provides that "[w]herever the regulations made under authority of [Chapter 3] impose other higher standards than are required in any other statute or local ordinance or regulation then the regulations made under authority of this chapter shall govern." The City Code provisions addressing variances are "regulations made under authority of Chapter 3." But, the regulations addressed by § 307 are zoning laws aimed at details such as lot sizes and building height—not regulations governing the board of adjustment. Because we can resolve this case on the basis of the lack of a conflict with § 327(a)(3), we need not reach the City's argument under § 307.

[35] *See, e.g.*, *Mayor & Council of Wilmington v. Smentkowski*, 198 A.2d 685, 687 (Del. 1964).

[36] *See Cantinca*, 884 A.2d at 473 ("[C]oncurrent regulation of the same subject matter, without more, does not create a preemption justifying conflict.").

17

of Title 22, where the state statutes use the word "shall," when it came to the "Determinations of [B]oard" of adjustment, the General Assembly used permissive language—the board *may* grant a variance, but is not compelled by the statute to do so.[37] If the board is under no state statutory obligation to grant any variance, then a municipality is free to enact variance requirements stricter than those in state law. As we have noted before, "[s]tatutory and local regulation may coexist in identical areas although the latter, not inconsistently with the former, exacts additional requirements, or imposes additional penalties."[38]

Variances are exceptions to zoning laws that promote uniformity in land use planning. Without minimum standards, municipalities could grant variances based on more lenient standards than state law, or no standards at all. Section 327(a) requires that any variance granted by a municipal board of adjustment meet the minimum requirements of the state statute. It does not require that a variance be

---

[37] The state statute addressing municipal boards of adjustment is consistent with the comparable state statute governing county boards of adjustment. *See* 9 *Del. C*. § 6917 ("The Board *may* grant a variance in the application of the provisions of the zoning ordinance or code only if all of the following findings are made . . .") (emphasis added). In contrast to these sections, the General Assembly used "shall" throughout Chapter 3. *See* 22 *Del. C*. §§ 302; 303-07; 309-12; 321-32. We presume the General Assembly's use of the word "may" instead of "shall" is a meaningful variation. *See Clark v. State*, 65 A.3d 571, 577 (Del. 2013) ("We presume that the General Assembly intentionally chose particular language"); *see also* Legislative Council's Division of Research, *Delaware Legislative Drafting Manual*, 84-87 (2019 ed.) ("'May' means a person is permitted, has discretion, has a right, or is authorized to do something. Use 'may' to confer a power, privilege, or right").

[38] *Cantinca v. Fontana*, 884 A.2d 468, 473 (Del. 2005) (*quoting Firemen's Ins. Co. of Washington, D.C. v. Washington*, 483 F.2d 1323, 1328 (D.C. Cir. 1973).

granted.  Thus, the City of Lewes was free to adopt stricter standards for variance grants than those under the state law governing municipal boards of adjustment.[39]

It is worth noting that many municipalities have adopted similar ordinances over the years.[40]  The Superior Court has also twice affirmed their validity.[41]  While not dispositive, it does show that the General Assembly has so far allowed municipalities to enact stricter standards for variance grants.

## IV.

The judgment of the Superior Court is reversed, and the City of Lewes board of adjustment decision is reinstated.

---

[39] The Superior Court cited our decisions in *Board of Adjustment of Sussex County v. Verleysen*, 36 A.3d 326 (Del. 2012), and *County Council of Sussex County v. Green*, 516 A.2d 480 (Del. 1986), to support the proposition that "the municipality must conform with standards established by the General Assembly."  *Nepa*, 2018 WL 1895699, at *8.  Those cases dealt with variance grants and rezoning requests that did not meet the minimum standards required by state law—a result that is consistent with our decision in this appeal.

[40] *See, e.g.*, Dewey Beach Municipal Code § 101-34(B) (providing for factors that shall be considered beyond the *Kwik-Check* factors); Wilmington Municipal Code § 48-594 (same); Georgetown Municipal Code § 107-31 (same); Middletown Municipal Code § 78-31 (same); Dewey Beach Municipal Code § 185-68 (same).

[41] *Hellings v. City of Lewes Bd. Of Adjustment*, 1998 WL 960710 (Del. Super. Dec. 31, 1998), *rev'd on other grounds*, 734 A.2d 641, 1999 WL 624114 (Del. 1999) (TABLE) (noting the board could have adopted a more stringent standard); *Dale v. Town of Elsmere*, 1988 WL 40018, at *2 (Del. Super. Apr. 20, 1988) (applying the more stringent test codified by Elsmere).

**VAUGHN**, Justice, concurring in the judgment:

I concur in the Court's judgment for reasons that I will explain. I write separately because I think there is no valid source of legislative authority for § 197-92 of the Lewes City Code, and I, therefore, agree with the Superior Court's finding that the ordinance "is *ultra vires* and cannot be applied." [1] The power of municipalities to enact zoning ordinances is a power delegated to them by the General Assembly as part of the State's police power. [2] Municipalities have no inherent authority to enact zoning ordinances. [3] The enabling legislation enacted by the General Assembly for this purpose is currently codified in Chapter 3 of Title 22. While the delegation of authority is broad and should be liberally construed, the delegated authority must be exercised in conformance with the enabling legislation.

Municipal boards of adjustment are created under 22 *Del. C.* § 321, which appears in Subchapter II of Chapter 3. This section provides that a municipal legislative body "shall" provide for the appointment of a board of adjustment and further provides that "in the rules and regulations adopted pursuant to the authority of this chapter shall provide that the board may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the

---

[1] *Nepa v. Bd. of Adjustment*, 2018 WL 1895699, at *9 (Del. Super. Apr. 11, 2018).
[2] Del. Const. art. II, § 25 ("The General Assembly may enact laws under which municipalities and the [counties] may adopt zoning ordinances . . . and the exercise of such authority shall be deemed to be within the police power of the State.").
[3] *See id.*

1

ordinance."[4] But this section does not grant any authority to adopt rules and regulations establishing criteria for the granting of a variance for two reasons. First, a special exception is quite different from a variance.[5] As this Court has previously explained, "[i]n the case of an exception, the law itself has foreseen the possibility that a departure from its provisions may be desirable if certain specified facts or circumstances are found to exist."[6] That is, "[a]n 'exception' is one allowable where facts and conditions detailed in the ordinance are found to exist."[7] A variance, however, "involves an overriding of the law itself, based upon a finding that the law as written would inflict unnecessary hardship on the property owner."[8]

Second, I read the phrase "rules and regulations adopted pursuant to the authority of this chapter," to mean the rules and regulations enacted pursuant to 22 *Del. C.* § 301 and the other enabling sections of Chapter 3. I do not think that § 321

---

[4] 22 *Del. C.* § 321.

[5] *In re Emmett S. Hickman Co.*, 108 A.2d 667, 673 (Del. 1954).

[6] *Id.*

[7] *Id.* (omissions omitted) (quoting *In re Devereux Found., Inc.*, 41 A.2d 744, 746 (Pa. 1945)). Although the Court in *In re Emmett S. Hickman Co.* used the term "exception" and not "special exception," it was undoubtedly referring to "special exceptions" as that term is used in the statute. The statute in effect at that time, like the one in effect today, distinguished between a "special exception" and a "variance." *See* 22 *Del. C.* §§ 321, 327(a)(2)-(3) (1953).

[8] *In re Emmett S. Hickman Co.*, 108 A.2d at 673; *see also* 83 Am. Jur. 2d *Zoning and Planning* § 708 ("Unlike a variance which gives permission to an owner to use property in a manner forbidden by, or inconsistent with, a local zoning ordinance, a 'special exception' gives permission to use property in a way that is consistent with the zoning ordinance although not necessarily allowed as of right." (footnote omitted)). At the time *In re Emmett S. Hickman Co.* was decided, § 327 allowed variances only where there was an "unnecessary hardship," 22 *Del. C.* § 327(a)(3) (1953); the "exceptional practical difficulties" language was added in 1985, *see* 65 Del. Laws ch. 61, § 1 (1985).

can itself be reasonably construed as a delegation of authority to a municipal legislative body to establish the standard for granting a variance. This interpretation is consistent with the statutory scheme. Section 301 is the general grant of power to municipalities to enact zoning ordinances. Inherent in this authority is the power to create conditional size- and use-based allowances—or special exceptions. Section 321 simply recognizes that a locality can create such conditional allowances and that, if a locality does so, it must provide that the board of adjustment can make such special exceptions when the relevant conditions are met.[9]

Instead, the General Assembly has itself set the criteria for the granting of a variance in 22 *Del. C.* § 327(a). That section provides that a board of adjustment "may" hear and decide appeals, hear and decide special exceptions, and authorize variances.[10] The section also sets out the statutory test a municipal board of adjustment must follow in deciding whether to grant a variance.[11] Nothing in the statute states that it is setting only minimum standards for granting a variance or that a municipality is free to require stricter standards. By using the word "may," § 327(a)(3) gives the board of adjustment—an entity separate and distinct from a

---

[9] *See* 22 *Del. C.* § 321; *see also id.* § 327(a)(2) ("The board of adjustment may . . . [h]ear and decide special exceptions to the terms of the ordinance upon which the board is required to pass under such ordinance.").

[10] *Id.* § 327(a)(1)-(3).

[11] *Id.* § 327(a)(3).

3

municipality's legislative body—the authority to grant (or not grant) variances.[12] I think the use of the word "may" simply emphasizes the independence of the board of adjustment and its broad discretion to grant or not grant relief that an applicant may seek. It is generally accepted that absent express, statutory authority, a local government (such as a municipal legislative body) cannot enlarge or limit a board of adjustment's authority.[13] Local governments, in regulating land use, "must conform with standards established by the General Assembly," which requires "an adherence to the statutory or decisional standards then controlling."[14] Therefore, unless a city's legislative body is acting pursuant to express, state-level statutory authority to restrict a board of adjustment's power, a city's legislative body cannot curtail a board of adjustment's state-level statutory authority by further limiting the circumstances where a variance may be granted.[15]

---

[12] *Id.* ("The *board of adjustment* may . . . [a]uthorize, in specific cases, such variance from any zoning ordinance, code or regulation . . . ." (emphasis added)).

[13] *See, e.g.*, *Swann v. Bd. of Zoning Adjustment*, 459 So. 2d 896, 899 (Ala. Civ. App. 1984) ("[S]ince the board of adjustment derives its powers from the state legislature, such powers cannot be circumscribed, altered, or extended by the municipal governing body."); *Komondy v. Zoning Bd. of Appeals*, 16 A.3d 741, 747 (Conn. App. Ct. 2011) ("[Zoning boards of appeal] possess a limited authority, as circumscribed by statute, the scope of which cannot be enlarged or limited by either the board or the local zoning regulations."); *see also* 83 Am. Jur. 2d *Zoning and Planning* § 634.

[14] *Cty. Council v. Green*, 516 A.2d 480, 481 (Del. 1986) (per curiam).

[15] *See New Castle Cty. Council v. BC Dev. Assocs.*, 567 A.2d 1271, 1275 (Del. 1989) ("[I]t is axiomatic that delegated power may be exercised only in accordance with the terms of its delegation." (citing Del. Const. art. II, § 25 and collecting cases)).

4

Aside from one, specific exception, § 327(a)(3) does not delegate to the municipal legislative body any role in the granting of variances. In 2008, § 327(a)(3) was amended to add, at the end of the section, that "the legislative body of any city or incorporated town may, by ordinance, vest a designated town official or department with authority to administratively grant a dimensional variance for existing conditions that do not exceed 1 foot of the required dimension restrictions."[16] Apart from this "1 foot" rule, § 327 does not delegate any authority to a municipal legislative body to establish criteria for the granting of a variance.

The appellants contend that other sections of Chapter 3, Title 22, contained in Subchapter I, give a municipal legislative body the authority to adopt rules and regulations that make the criteria for granting a variance stricter than § 327(a)(3). They specifically mention §§ 301, 302, and 304 as sources of such authority. However, none of these provisions expressly, or in my view implicitly, delegate to a municipal legislative body the authority to adopt a variance ordinance that conflicts with § 327(a)(3).

First, Section 301 is a general grant of authority to municipalities with respect to zoning regulation. It provides:

> For the purpose of promoting health, safety, morals or the
> general welfare of the community, the legislative body of
> cities and incorporated towns may regulate and restrict the
> height, number of stories and size of buildings and other

---

[16] 22 *Del. C.* § 327(a)(3); *see also* 76 Del. Laws ch. 371, § 1 (2008).

> structures, percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes.[17]

Despite this broad grant of power, this section does not authorize a municipality to alter the standards under which its board of adjustment may grant variance requests.

Second, § 302, which authorizes municipalities to create zoning districts, expressly limits its grant of authority to "any or all of the purposes provided in § 301."[18] Therefore, because § 301 does not authorize a municipality to adopt a variance ordinance, § 302 necessarily cannot do so.

Third, § 304, when read in context with the entire statutory scheme, does not authorize a municipality to alter the standards for granting variances. Section 304 provides: "The legislative body of the municipality shall provide for the manner in which the regulations and restrictions . . . of the districts shall be . . . enforced . . . ."[19] Granting (or not granting) a variance is not a means of enforcing restrictions. Issuing a stop-work order, as was done here, is a manner of enforcing restrictions. This section authorizes a municipality to provide the manner in which it will enforce its zoning ordinances—such as how it will enforce physical dimensional requirements. This section does not empower a municipality to make regulations

---

[17] 22 *Del. C.* § 301.
[18] *Id.* § 302.
[19] *Id.* § 304.

governing (or proscribing) the situations in which variances may (or may not) be granted by a board of adjustment—that is a jurisdictional issue controlled by § 327(a)(3).[20] Reading § 304 to broadly empower a municipal legislative body to alter the standards for granting variances renders § 327(a)(3) superfluous. For example, if under the guise of § 304, a municipal legislative body were to enact an ordinance that prohibits the granting of variances in all circumstances, then § 327(a)(3) would be meaningless.[21]

The appellants also disclaim § 307 as a source of regulatory authority, but they contend that § 307 recognizes that municipal legislative bodies can enact stricter standards for variances than the statutory standard.[22] Section 307 provides that when a zoning regulation conflicts with a statute, a local ordinance, or another regulation, the zoning regulation, statute, local ordinance, or other regulation imposing the more restrictive or higher standard governs.[23] But the statute applies to "regulations made under the authority of this chapter."[24] Section 307 therefore presumes the underlying validity of the regulation and simply determines its priority among conflicting

---

[20] *See Bd. of Adjustment v. Henderson Union Ass'n*, 374 A.2d 3, 4 (Del. 1977) (per curiam) ("The Board's authority to grant a variance is derived entirely from its jurisdictional statute."); *id.* at 5 ("[T]hese statutory standards supply both a foundation for the Board's power and a yardstick against which its discretion may be measured.").

[21] *See Sussex Cty. Dep't of Elections v. Sussex Cty. Republican Comm.*, 58 A.3d 418, 422 (Del. 2013) (en banc) ("We presume that the General Assembly purposefully chose particular language and therefore construe statutes to avoid surplusage if reasonably possible.").

[22] They contend that the Superior Court misapplied § 307.

[23] *See* 22 *Del. C.* § 307.

[24] *Id.*

provisions. It is not a source of authority. If there was a provision within Chapter 3 that gave municipalities the authority to enact stricter standards for variances, then I think it could perhaps be said that under § 307, § 327(a)(3) establishes a minimum standard for variances. But before applying § 307, one must first make the threshold determination that the regulation in question is authorized by Chapter 3. In my view, Lewes City Code § 197-92 is not authorized by Chapter 3. Because Chapter 3 does not provide such authority, § 307 is irrelevant.

The appellants also contend that the city's charter authorizes § 197-92. The provisions relied upon, however, are general in nature, and none, in my view, authorize the city to enact an ordinance that conflicts with § 327(a)(3). Moreover, it is unclear how the charter could authorize such a law given that the charter itself granted Lewes's City Council the authority "to exercise all the powers and authorities vested in the legislative body of cities and incorporated towns under and by virtue of 22 Del. C. § 301 et seq., and all amendments thereto"[25] and "[t]o make, adopt and establish all such ordinance, regulations, rules and by-laws, *not contrary to the laws of this State*."[26] Because no provision of Chapter 3 of Title 22 authorizes a municipal legislative body to enact a variance ordinance, the city's charter cannot and does not provide such authority.

---

[25] Lewes, Del., C. (Charter) § 29(23).
[26] *Id.* § 29(41) (emphasis added).

8

The point I make has been recognized by courts in other jurisdictions where, as here, municipal zoning power is derived from an enabling act passed by the state legislature. In *Swann v. Board of Zoning Adjustment*, the Court of Civil Appeals of Alabama struck down a municipal ordinance stripping the board of adjustment of its statutory authority to grant a use variance.[27] The court reasoned that, in the context of the variance ordinance involved there, "since the board of adjustment derives its powers directly from the state legislature, such powers cannot be circumscribed, altered, or extended by the municipal governing body."[28] *Bostic v. City of West Columbia* is another case where, on the same reasoning, a municipal ordinance that stripped the board of adjustment of its authority to grant a use variance was struck down.[29] While deciding the case on other grounds, the Appellate Court of Connecticut in *Komondy v. Zoning Board of Appeals* also recognized that, in the context of a variance ordinance, "zoning boards of appeal are creatures of statute" and "possess a limited authority, as circumscribed by the statute, the scope of which cannot be enlarged or limited by either the board or the local zoning regulations."[30]

---

[27] 459 So. 2d at 899-900.

[28] *Id.* at 899.

[29] 234 S.E.2d 224, 225-266 (S.C. 1977).

[30] 16 A.3d at 747; *see also* 83 Am. Jur. 2d *Zoning and Planning* § 634 ("Under most zoning enabling statutes, the jurisdiction of a board of adjustment to grant variances is specifically described and limited. The power cannot be exercise by the legislative authority unless the power is expressly delegated to the legislature. If the power to grant variances is vested in the board of adjustment by statute, it cannot be taken from the board by ordinance or delegated to another agency or to a court." (footnotes omitted)).

Lewes City Code § 197-92D(1) also purports to strip the Lewes board of adjustment of its authority under § 327(a)(3) to grant a use variance. The reasoning of these cases is consistent with my own.

Since 1934 when the General Assembly passed an earlier version of what is now known as § 327, the statute has contained a state-wide standard that local boards of adjustment are obligated to follow when deciding whether or not to grant a variance. The conclusion I reach from § 327's articulation of a state-wide standard under which local boards of adjustment may grant variances, and the absence of any section of Chapter 3 that authorizes a municipal legislative body to write a variance regulation, is that § 197-92 is null and void.

I know that many municipalities, perhaps all, have their own variance ordinances. But it appears to me that the State has established a state-wide standard under which a municipal zoning regulation can be waived by the grant of a variance, and municipal legislative bodies are not authorized to modify that standard.

I concur in the judgment of this Court, however, because I am satisfied that in denying the variance request, the board of adjustment determined that a necessary predicate to awarding a variance under § 327(a)(3) was not satisfied. In concluding that "the Applicants have not demonstrated an exceptional practical difficulty sufficient to warrant granting their request for variances,"[31] the board stated that it

---

[31] App. to Appellant's Opening Br. at A116.

10

did not "find that the variances c[ould] be granted without substantial detriment to the public good."[32] These findings, which I am satisfied are supported by substantial evidence under our standard of review, are fatal to the appellee's variance requests under the exceptional-practical-difficulty test set forth in § 327(a)(3) because a variance may be granted under that section only if it "may be granted without substantial detriment to the public good."[33]

---

[32] *Id.* at A117.
[33] 22 *Del. C.* § 327(a)(3).